UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENNETH SCHMITT                                                                                   PLAINTIFF

VERSUS                                                 CIVIL ACTION NO. 3:17CV117-TSL-RHW

UNITED STATES OF AMERICA et al                                                          DEFENDANTS

### PROPOSED FINDINGS OF FACT AND RECOMMENDATION

    Kenneth Schmitt, proceeding *pro se* and *in forma pauperis*, filed a claim pursuant to the Federal Tort Claims Act (FTCA) against the United States of America and a *Bivens*[1] action against several officials and employees of the Federal Correctional Complex in Yazoo City, Mississippi. Doc. [1]. In his complaint, Plaintiff alleges the following causes of action: (1) hazardous conditions of confinement in the FCC-Yazoo City Segregated Housing Unit (SHU) resulting from backed up sewage flooding the unit; (2) denial of due process during disciplinary proceedings; and (3) denial of medical care for abdominal pain and diarrhea. Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. Doc. [20]. Plaintiff filed a response in opposition and requests the opportunity to conduct discovery. Doc. [26]. The undersigned recommends that Defendants' motion be granted in part and denied in part. Specifically, all of Plaintiff's claims should be dismissed, with the exception of Plaintiff's FTCA medical malpractice claim against the United States of America.

    At the time of the incidents in question, Plaintiff was housed at FCC-Yazoo City. He alleges that on October 5, 2015, an officer discovered contraband (tobacco) in the cell occupied by Plaintiff and inmate Anthony Gentry. According to Plaintiff, Gentry admitted that the contraband belonged to him. Nevertheless, Plaintiff was placed in the SHU pending a

---

[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

disciplinary hearing. While confined in the SHU, multiple floods occurred because of toilets backing up. During the early evening hours of October 24, 2015, a toilet backed up causing sewage to flood the area. When officers noticed the flood, they advised inmates to use bedding and clothing to block the flow of sewage from entering their cells. After the sewage flow stopped, an orderly cleaned the hallway. Inmates were not given new linens or clothing until more than 25 hours after the flood. Plaintiff did not receive cleaning supplies until October 25, 2015 at 6:00 pm. On October 27, 2015, a plumbing crew removed a washcloth from the pipes. Plaintiff alleges that he began to have abdominal pain and diarrhea some time after the flooding incident, for which he sought and received medical treatment. Plaintiff complains that the medical treatment was inadequate. He contends that Defendant Dr. Natal cancelled or lost several tests of blood and stool samples.

With respect to the disciplinary proceedings for the contraband found in Plaintiff's cell, Defendant Derrick Mosely conducted a hearing. Defendant Mosley found Plaintiff guilty of possession of contraband and sentenced him to 30 days of segregation in the SHU and six months restrictions on personal property, commissary, visitation, and phone privileges. Plaintiff alleges he was found guilty because he refused to make a statement against his cellmate Anthony Gentry. But for his confinement in the SHU, Plaintiff alleges he would not have been subjected to the hazardous conditions caused by the flood of October 24, 2015.

<u>**Law and Analsyis**</u>

<u>**Standard of Review**</u>

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal is warranted if "it appears certain that the

plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

With respect to motions for summary judgment, Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion

for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Exhaustion**

As a threshold matter, Defendants argue that Plaintiff failed to exhaust the Bureau of Prison's administrative remedies for his claims against the individual Defendants. No action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. § 1997e(a). This exhaustion requirement extends to *Bivens* suits brought by federal prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is mandatory, even if the inmate seeks monetary relief. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation marks omitted). The Fifth Circuit takes "a strict approach to the exhaustion requirement." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)

Defendants have presented evidence demonstrating that Plaintiff failed to fully exhaust the Bureau of Prison's administrative remedies as to all claims except his FTCA claim against the United States. Doc. [20-5]. The evidence of record demonstrates that Plaintiff initiated administrative proceedings against Defendant Mosley; however, Plaintiff did not seek additional review following disposition of the rehearing. *Id.* at 3. In fact, Plaintiff ultimately succeeded on his appeal, which probably explains why he did not seek further administrative review. Defendant Mosley expunged Plaintiff's disciplinary infraction and restored Plaintiff's good-

4

conduct credit and privileges. Doc. [20-2] at 2. Plaintiff also initiated proceedings regarding hazardous conditions in the SHU. Doc. [20-5] at 3. However, the record demonstrates that Plaintiff did not see these proceedings through to conclusion. *Id.*

In response to Defendant's motion, Plaintiff asserts that he has exhausted all administrative remedies but alleges that grievances have disappeared or not been responded to in a timely fashion or were subject to tampering by prison officials. Doc. [26] at 1-3. He believes that he can prove exhaustion through the discovery process. *Id.* Plaintiff offers no documentary evidence or specific factual allegations with regard to his exhaustion theory. He does not explain how discovery might demonstrate that full exhaustion in fact occurred, or was somehow prevented by prison officials. In light of Defendants' summary judgment evidence demonstrating the absence of exhaustion, Plaintiff fails to provide a sufficient basis for allowing discovery on the exhaustion issue. Plaintiff's mere speculations and unsupported assertions are not sufficient to contradict Defendants' evidence. As such, the undersigned recommends that Plaintiff's claims against the individually named Defendants be dismissed based on Plaintiff's failure to exhaust administrative remedies. In the alternative, the undersigned finds that Plaintiff's claims against the individual Defendants fail on the merits.

**Conditions of Confinement**

Plaintiff alleges that multiple floods occurred in the B-range of the SHU and that fecal matter remained in open areas for a week. He alleges a specific instance on October 24, 2015, where plumbing issues resulted in the SHU flooding and raw sewage entering inmates' cells. He argues that conditions in the SHU after the flood were hazardous and speculates that exposure to the raw sewage caused Plaintiff's abdominal pain and diarrhea.

The Constitution does not require that inmates be housed in comfortable prisons; however, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care. *See Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). *See also Helling v. McKinney*, 509 U.S. 25, 36 (1993) (holding that the inmate must show that the risk of which he complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk"). In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, i.e. an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison official possessed a sufficiently culpable state of mind. *Id.* The required state of mind is one of deliberate indifference to inmate health or safety. *Id.* Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed. *Id.*

Filthy cells may under some circumstances, constitute cruel and unusual punishment. However, the length and degree of exposure cannot be ignored; filthy conditions "might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). Although the conditions described by Plaintiff sound unpleasant, they do not rise to the level of a constitutional deprivation. Moreover, Plaintiff's factual allegations demonstrate that prison officials were not deliberately indifferent to the hazardous condition. Plaintiff generally alleges that the SHU flooded multiple times. However, his complaint focuses

on a single, isolated event that occurred on October 24, 2015, when a washcloth became lodged in the plumbing. There is no allegation that prison officials created the hazardous condition. Once prison officials noticed the flooding, they instructed the inmates to block the floodwaters using bedding and clothing. Inmates in the affected cells were moved. After the sewage flow stopped, an orderly cleaned the hallway. Approximately 25 hours after the flooding incident, inmates were issued fresh bedding and clothing and were given cleaning supplies. Two or three days after the incident, a plumbing crew removed the washcloth that had blocked the pipes and caused the flood. The allegations in Plaintiff's own complaint demonstrate that the alleged condition was a brief, isolated event and that prison officials responded to the condition in a reasonably prompt fashion. In similar and even more onerous circumstances, courts have concluded that inmates failed to state constitutional claims based on filthy and/or flooded cells. *See Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (no constitutional violation where prisoner alleged he was housed for three days in a filthy cell and was provided cleaning supplies); *Smith v. Copeland* 87 F.3d 265, 268-69 (8th Cir. 1996) (prisoner housed for four days in cell with raw sewage from overflowing toilet failed to state Eighth Amendment claim); *Geagan v Couvillon*, 2018 WL 1750954, at *4 (W.D.La. Mar. 22, 2018) (no violation where prisoner complained of two incidents where toilet overflowed causing feces, urine, and other foreign objects to flood the tier). *Compare McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991) (inmate repeatedly having to sleep and live in raw sewage and foul water constituted cruel and unusual punishment).

**Disciplinary Hearing & Due Process**

Plaintiff alleges that his due process rights were denied during the disciplinary hearing process. It is unclear precisely how he feels his due process rights were violated other than the contention that Disciplinary Hearing Officer (Defendant Mosley) either disregarded or

7

disbelieved inmate Gentry's admission that the contraband items belonged to him and not to Plaintiff. Plaintiff alleges that he was found guilty because he refused to make a statement against inmate Gentry.

Plaintiff does not dispute whether he received advance notice of the hearing, a written statement of the evidence relied on, or the reasons for the discipline imposed, as required by *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974) to meet the requirements of due process. Plaintiff's due process claim appears to be nothing more than a dispute over the weight or sufficiency of the evidence supporting Defendant Mosley's finding of guilt. It is questionable whether Plaintiff's due process claims can even be brought pursuant to *Bivens*. *See Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017) (explaining situations where *Bivens* claims are unavailable). At least one court recently noted that the Supreme Court has not expanded *Bivens* to the context of procedural due process claims arising out of the prison disciplinary process. *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018). Regardless, due process requires only that "some evidence" in the record support the prison's disciplinary action. *Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005).

It is undisputed that contraband (tobacco) was found in the light fixture of the cell occupied by both Plaintiff and inmate Gentry. Defendant Mosley concluded that Plaintiff had knowledge of the tobacco found in the cell, despite his cellmate's alleged confession taking responsibility for possessing the tobacco. Doc. [20-2] at 2. Based on his review of the photographic evidence, Defendant Mosley observed that the light fixture where the tobacco was hidden had been visibly altered. *Id.* Defendant Mosley further noted that Plaintiff occupied the top bunk with the light fixture located between four and five feet from Plaintiff's bed. *Id.* Thus,

the undisputed record demonstrates that some circumstantial evidence supported Defendant Mosley's finding.

Ultimately, Plaintiff received due process through the Bureau of Prison's administrative appeal process; the sentence was expunged and his good-conduct time and privileges were restored. He apparently suffered no further adverse consequences. To the extent Plaintiff complains he spent a brief period of time in the SHU, such a claim does not state a constitutional violation. Administrative segregation, being an incident of the ordinary life of a prisoner, will never be a ground for a constitutional claim absent exigent circumstances. *Harper*, 174 F.3d at 719. Brief periods of confinement in administrative segregation, such as alleged by Plaintiff, do not state a constitutional claim. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (holding that 30-day confinement in disciplinary segregation did not create a liberty interest). Moreover, the loss of inmate privileges fails to state a liberty interest under the Constitution. *See Landor v. Lamartiniere*, 515 Fed. App'x 257, 259 (5th Cir. 2013) (holding that loss of privileges and transfer to different cell block did not implicate prisoner's liberty interest); *Thomas v. Quaterman*, 272 Fed. App'x 406, 408 (5th Cir. 2008) (per curiam) (holding that loss of privileges and cell restrictions are ordinary incidents of prison life and do not give rise to a protected liberty interest); *Taylor v. Stanciel*, 202 Fed. App'x. 662, 663 (5th Cir. 2006) (holding that a loss of privileges for 30 days does not give rise to a liberty interest).

**Medical Care & Deliberate Indifference**

Plaintiff alleges that he received inadequate medical care for abdominal pain and diarrhea, which he suspects were caused by exposure to unsanitary conditions in the SHU. He alleges that Dr. Natal ordered tests but that several tests were either cancelled or the results lost.

9

To demonstrate deliberate indifference, an inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Mere disagreement with the level and type of medical treatment is insufficient to state a claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Failed treatment also does not constitute deliberate indifference to medical care. *Domino*, 239 F.3d at 755. A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

Plaintiff fails to allege that Dr. Natal was deliberately indifferent to his medical condition. Rather, he simply complains about the type and frequency of treatment and/or testing. His own allegations demonstrate that Dr. Natal was not deliberately indifferent. The abdominal pain and diarrhea began some time after the October 24, 2015, flooding incident. Plaintiff's first medical request form regarding stomach pain is dated November 9, 2015. Doc. [20-6] at 1. He admits that on November 10, 2015, he was treated with Malox. He admits that he made multiple medical visits for this condition and that Dr. Natal prescribed an antibiotic on one occasion. He admits that Dr. Natal ordered several tests. He admits that Dr. Natal ordered four blood tests and three stool samples, although some of these were allegedly "cancelled or lost". Plaintiff asserts that Dr. Natal refused to order testing for bacterial infections. Prison medical officials are under no constitutional obligation to order specific testing simply because an inmate demands it.

The medical records reflect that Dr. Natal evaluated, tested, and treated Plaintiff for abdominal pain. *See* Doc. [20-7] at 2-3; [20-6]. These included an xray as well as tests of urine, blood, and stool samples. *See* Doc. [20-6] at 10, 24-28, 61, 69-71. The medical records reflect that the tests were negative. *Id.* Dr. Natal prescribed Omeprazole and enrolled Plaintiff in the chronic care clinic. Plaintiff argues in his response that Dr. Natal is "guilty of trying to cover up any and all wrong doing by herself" and that her notes are inaccurate. However, he provides no specific factual allegations for these assertions. Regardless, Plaintiff's complaint merely alleges displeasure with the frequency or type of treatment and testing he received. Plaintiff's own factual allegations, in conjunction with the medical records, refute any notion of deliberate indifference. Plaintiff's allegations may state a cause of action for medical malpractice, but they do not rise to the level of deliberate indifference.

**FTCA—Medical Malpractice Claim**

Plaintiff's FTCA claim requires different treatment. Defendants concede that Plaintiff exhausted the FTCA claim as it relates to medical malpractice based on treatment he received at FCC-Yazoo City for abdominal pain and diarrhea. *See* Doc. [23] at 7. However, Defendants argue that the medical malpractice claim suffers from a failure of proof. *Id.* at 19-20. Specifically, Defendants assert that Plaintiff has failed to meet his burden of establishing the elements of a medical malpractice claim because he did not support his claim with competent expert evidence or testimony. *Id.* As such, the Government argues it is entitled to a grant of summary judgment.

The FTCA authorizes civil actions for damages against the United States for personal injuries caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state where the negligent act or omission

11

occurred. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). In an FTCA suit, the Court applies the substantive law of the state where the allegedly negligent act or omission occurred. *Estate of Sanders v. United States*, 736 F.3d 430, 435 (5th Cir. 2013). Thus, the undersigned looks to Mississippi law to determine the elements of Plaintiff's medical malpractice claim. *Id.*

Under Mississippi law, a *prima facie* case of medical practice requires proof of the following elements: (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant. *Id.* at 435-36. Expert testimony must be used to establish these elements in a medical malpractice claim. *Id.* at 436. If the Plaintiff fails to present sufficient evidence of these elements, summary judgment is appropriate. *Id.*

Defendants first responsive pleading to Plaintiff's complaint was the motion to dismiss or for summary judgment now under consideration. The Court has not entered any type of case management order, nor set an expert designation or discovery deadline. To the Court's knowledge, no formal discovery has been conducted by either party. In his response to the Government's motion, Plaintiff requests an opportunity to conduct discovery to prove the elements of his medical malpractice claim. Doc. [26] at 10. It would premature to grant summary judgment on Plaintiff's medical malpractice claim without first affording Plaintiff the opportunity to conduct discovery. Specifically, under Mississippi law, Plaintiff must present expert evidence supporting each of the elements of his medical malpractice claim. Accordingly, the undersigned recommends denying the Government's motion for summary judgment as to Plaintiff's FTCA medical malpractice claim, subject to re-urging at the conclusion of discovery.

To the extent Plaintiff alleges FTCA claims against the individually named Defendants for constitutional torts, his claims fail.  The FTCA is a limited waiver of sovereign immunity of the United States relating to negligent acts of government employees.  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  The United States has not waived its sovereign immunity for constitutional tort claims, such as those raised by Plaintiff against the individual Defendants.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994).

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendants' [20] Motion to Dismiss or for Summary Judgment be GRANTED in part and DENIED in part.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted

by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 6th day of August, 2018.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE